Gus POULOS and A.G.P.
Marketing, Plaintiffs,

v.

NAAS FOODS, INCORPORATED, and Ranks, Hovis, McDougall, PLC Group (RHM Holdings U.S.A. Inc.), Defendants.

No. 90–C–0645.

United States District Court,
E.D. Wisconsin.

Sept. 10, 1990.

Robert E. Sutton, Sutton & Kelly, Milwaukee, Wis., for plaintiffs.

Michael E. Husmann and John E. Flanagan, Michael, Best & Friedrich, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

WARREN, Chief Judge.

Plaintiffs' motion to remand this action to state court and defendants' motion to compel production of documents and answers to deposition questions are before the Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this suit in Milwaukee County Circuit Court as Case No. 89–CV–1555453 on November 10, 1989, alleging that defendants are liable under the Wisconsin Fair Dealership Act, Wis.Stat. Ch. 135 *et seq.* ("WFDL"), for terminating plaintiff Poulos as a sales representative for defendant NAAS Foods, Inc. Plaintiffs completed service on defendants by December 5, 1989. Petition for Removal ¶ 2, pp. 1–2. Defendants filed a Petition for Removal of this action on June 26, 1990, asserting that diversity of citizenship exists between the parties, and thus that removal is proper pursuant to 28 U.S.C. § 1441. The defendants allege the following citizenship of the parties: (a) plaintiff Gus Poulos was doing business as A.G.P. Marketing, a sole proprietorship, and is a resident of the

state of Illinois; and (b) defendant NAAS Foods, Inc. is a Delaware corporation with its principal place of business located in Portland, Indiana. Before removal of this action, Ranks, Hovis, McDougall, and PLC Group (RHM Holdings U.S.A. Inc.) (hereafter "RHM") were joined as defendants and were alleged in the Complaint to be the sole shareholder of defendant NAAS Foods, Inc. RHM admits it is the sole shareholder of NAAS Foods, Inc. with its principal place of business located in Illinois.

On June 11, 1990, a hearing was held before the Honorable David V. Jennings Jr., Branch 24 of the Milwaukee County Circuit Court, on the motion of RHM for summary judgment. On June 20, 1990, Judge Jennings granted the summary judgment motion of RHM. The defendants assert that the amount in controversy exceeds $50,000.00, that this action is one over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and that it may properly be removed pursuant to 28 U.S.C. § 1441(a).[1]

## II. PLAINTIFFS' MOTION TO REMAND

### A. *Parties' Arguments*

Plaintiffs moved to remand this action to Milwaukee County Circuit Court on July 20, 1990.[2] As grounds, plaintiffs advance: (1) that defendants improperly removed the action because a nondiverse party, RHM, was dismissed by summary judgment and thus dismissed involuntarily with respect to the plaintiff; (2) that plaintiffs joined RHM in good faith, not fraudulently, and not for the purpose of defeating diversity; and (3) that contrary to defendants' assertions in the Petition for Removal, plaintiffs joined RHM because a substantial legal basis exists for holding a parent company liable for a subsidiary in a claim for wrongful termination of a dealership. The plaintiffs thus

move for the remand of the actions and attorneys' fees and costs incurred in bringing this motion pursuant to 28 U.S.C. § 1447(c).

In response the defendants assert that: (1) the plaintiffs joined RHM to defeat removal jurisdiction; (2) § 1446(b) allows for removal after the Court ordered dismissal of the nondiverse party, RHM; and (3) Poulos voluntarily allowed the dismissal of the nondiverse party, RHM.

In support of the first reason, the defendants assert initially that Poulos has failed to state a claim against RHM. The defendants assert that authority exists that the parent company shareholder (RHM) is not liable for the alleged wrongs of the subsidiary corporation (NAAS Foods, Inc.). For this proposition the defendants cite *Consumer's Co-Op of Walworth County v. Olsen*, 142 Wis.2d 465, 475, 419 N.W.2d 211 (1988); 1 Fletcher's Cyclopedia of Corporations § 43.10 (1990). The defendants state further that pursuant to the language of the WFDL, only grantors are liable for a violation. Wis.Stat. § 135.06. The defendants conclude that the only valid basis on which RHM could be joined as a defendant is to "pierce the veil" between the two corporations to hold it liable for NAAS's debts. Yet defendants contend that Poulos never stated a claim to establish this theory of liability because he failed to allege that RHM abused the corporate form of NAAS such that NAAS had no separate existence of its own; that recognition of the corporate form would constitute a fraud or create an injustice; and that this alleged abuse of the corporate form caused Poulos's alleged loss.

As evidence for the second reason, the defendants aver that no case law exists from the United States Court of Appeals for the Seventh Circuit adopting the "voluntary/involuntary" distinction as prevent-

---

1. The Court notes that the defendants' Petition for Removal was properly filed within 30 days after "receipt by the defendant ... of a copy of an ... order or other paper from which it may first be ascertained that the case is one which is or has become removable,...." 28 U.S.C. § 1446(b).

2. The Court notes that plaintiffs' motion to remand was properly filed within 30 days after the filing of the notice of removal, pursuant to 28 U.S.C. § 1447(c).

ing removal. The defendants argue that the legislative history of § 1446(b) does not demonstrate a Congressional intent to limit removal only to cases in which a plaintiff voluntarily dismisses a nondiverse defendant. The defendants thus argue that the "plain meaning" of § 1446 allows for removal, in that a court order exists which creates diversity jurisdiction.

To buttress their third reason, the defendants state that even if this Court accepts the voluntary/involuntary distinction for purposes of determining the propriety of removal, Poulos's actions in this case indicate that he voluntarily gave up his right to pursue a claim against RHM. The defendants argue that a "constructive voluntary termination" of Poulos's case against RHM occurred when he mounted a token resistance to RHM's summary judgment motion. *See* Defendant's Brief in Opposition to Motion to Remand pp. 14–15.

### B. *Discussion*

#### 1. Defendants' First Reason Not to Remand: Fraudulent Joinder [3]

For an action to be properly removed from state court, the district court must have been able to exercise original jurisdiction over the original claims. 28 U.S.C. § 1441(a). An additional requirement in diversity actions is that no properly joined and served defendant can be "a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).[4]

 A plaintiff cannot defeat a defendant's right of removal on the basis of diversity of citizenship by the "fraudulent joinder" of a nondiverse defendant against whom the plaintiff has no real cause of action. *Rose v. Giamatti*, 721 F.Supp. 906,

913 (S.D.Ohio 1989) (citing *inter alia Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921)). The removing party bears the burden of establishing federal jurisdiction. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981). Thus, when there is an allegation such as the one at bar, "[t]he removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983)).

The United States Court of Appeals for the Fifth Circuit set out the standard to be applied in cases where fraudulent joinder is alleged in *B., Inc.* That court stated:

> The district court must ... evaluate all of the factual allegations in a light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. Moreover, the district court must resolve any uncertainties in controlling substantive law in favor of the plaintiff.
>
> If, having assumed all of the facts set forth by the plaintiff to be true and having resolved all uncertainties as to state substantive law against the defendants, the district court should find that there is no possibility of a valid cause of action being set forth against the in-state defendant(s), only then can it be said that there has been a "fraudulent joinder." However, if there is even a possibility that a state court would find a cause of action stated against any one of the named in-state defendant(s) on the facts alleged by the plaintiff, then the federal court must find that the in-state defendant(s) have been properly joined, that

---

**3.** Because the removing party bears the burden of establishing federal jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), the Court will evaluate the defendants' arguments for their rectitude, *as should one of them fail*, removal to this Court would be jeopardized.

**4.** "The policy underlying removal to federal court is to protect nonresident defendants from possible bias in state courts. In cases where at least one defendant is a citizen of the forum state, section 1441(b) prevents removal since the

lack of prejudice towards the citizen defendant is felt to extend to all defendants who are viewed collectively. Furthermore, a balance must be struck between the 'limited jurisdiction of federal courts and the need to prohibit plaintiffs who initiate actions in state court from defeating removal jurisdiction by the use of pleading fictions.'" *Apelian v. U.S. Shoe Corp.*, 664 F.Supp. 1370, 1372 (C.D.Cal.1987) (citing *Bryant v. Ford Motor Co.*, 794 F.2d 450, 452 (9th Cir.1986)).

there is incomplete diversity, and that the case must be remanded to the state courts.

*Id.* at 549–50 (citations omitted); *see also Laughlin v. Prudential Ins. Co.,* 882 F.2d 187, 190 (5th Cir.1989). The Fifth Circuit has also articulated this test as when there is "no arguably reasonable basis" that state law might impose liability on the nondiverse defendant, removal is allowed without complete diversity. *Tedder v. FMC Corp.,* 590 F.2d 115, 117 (5th Cir.1979).[5]

"In many cases, removability may be determined from the original pleadings, and normally an allegation of a cause of action against the resident defendant will be sufficient to prevent removal. But when a defendant alleges that there has been a fraudulent joinder, the court 'may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Rose,* 721 F.Supp. at 914 (citing *Dodd v. Fawcett Publications, Inc.,* 329 F.2d 82, 85 (10th Cir.1964)).[6]

The Fifth Circuit has stated:

> When confronted with allegations of fraudulent joinder, the trial court's vision must be synoptic rather than microscopic. The court must take care not to focus solely upon the factual minutiae of the individual case and thereby lose sight of the important questions of federal jurisdiction presented when the propriety of removal is contested.

· · · · ·

The "fraudulent joinder" issue must be seen by the trial courts as presenting a discrete threshold question. A trial court should not have to witness an entire epic drama before the necessary preclude [sic] has been acted out fully and the critics' verdict rendered. [The trial court should not hold] what amount[s] to a plenary trial on the merits until it ha[s] first been established that the court would take jurisdiction over the matter. Only if it could [be] shown *as a matter of law* that there was not possibility of there being a valid claim stated against the in-state [defendant] should the court [deny] the plaintiff's motion for remand.

*Brusseau v. Electronic Data Systems Corp.,* 694 F.Supp. 331, 334 (quoting *B., Inc.,* 663 F.2d at 554).

The Fifth Circuit "has endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims." *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (citing *B., Inc.,* 663 F.2d at 549 n. 9). That court "treats fraudulent joinder claims as capable of summary determination. When determining fraudulent joinder, the district court may look to the facts as established by summary judgment evidence as well as the controlling state law." *Id.*

█ Plaintiffs' complaint alleges that RHM was one of the defendants that violated Wis.Stat. Ch. 135, the WFDL. The Court looks to the substantive law of Wis-

---

**5.** The United States Court of Appeals for the Eleventh Circuit has promulgated a similar two-part test: "(1) look to see whether there is no possibility the plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court. These determinations should be made based upon the plaintiff's pleadings at the time of removal," and all questions of fact and controlling law should be resolved in favor of the plaintiff. *Cabalceta,* 883 F.2d at 1561 (11th Cir.1989) (citing *Insinga v. LaBella,* 845 F.2d 249, 254 (11th Cir.1988)).

**6.** For an excellent discussion of these two different interpretations and their theoretical underpinnings, *see Katz v. Costa Armatori, S.P.A.,* 718 F.Supp. 1508, 1511–17. The United States District Court for the Southern District of Florida developed a two-part test to bridge the theo-

retical problems with the differing interpretations. In the first step, the federal court uses Fed.R.Civ.P. 12(b)(6) to review the complaint under the relevant state law. Only if no cause of action is stated can the federal court conclude that the joinder of the nondiverse defendant was fraudulent, and thus permit removal. In the second step, reached only if a cause of action is stated, the federal court reviews the state record pursuant to Fed.R.Civ.P. 11. This is the requirement that an attorney maintain a case only if he conducts a reasonable inquiry throughout and believes in good faith that the maintenance of the action is warranted by existing law or a change therein. If this test is satisfied, then fraudulent joinder does not exist, and the case is remanded. If the test is not satisfied, then the case should be removed. *Id.* at 1515–16.

consin to determine whether the plaintiffs might establish liability. Specifically, the Court must determine whether plaintiffs have articulated a cognizable cause of action under Wisconsin law against defendant RHM.

■ The defendants assert that authority exists that the parent company shareholder (RHM) is not liable for the alleged wrongs of the subsidiary corporation (NAAS Foods, Inc.). *Consumer's Co-Op of Walworth County v. Olsen,* 142 Wis.2d 465, 475, 419 N.W.2d 211 (1988); 1 Fletcher's Cyclopedia of Corporations § 43.10 (1990). The defendants aver that the only valid basis on which RHM could be joined as a defendant is to "pierce the veil" between the two corporations to hold it liable for NAAS's debts. Yet defendants contend that Poulos never stated a claim to establish this theory of liability because he failed to allege that RHM abused the corporate form of NAAS such that NAAS had not separate existence of its own; that recognition of the corporate form would constitute a fraud or create an injustice; and that this alleged abuse of the corporate form caused Poulos's alleged loss.

To analyze the sufficiency of plaintiffs' claim against RHM, it is first necessary to determine the requirements of "piercing the corporate veil" in this case. As the defendants point to in *Consumer's Co-Op,* "disregarding the corporate fiction" has been recognized in Wisconsin since *Milwaukee Toy Co. v. Indus. Comm'n of Wisconsin,* 203 Wis. 493, 495–96, 234 N.W. 748 (1931), and has been reaffirmed in *Sprecher v. Weston's Bar, Inc.,* 78 Wis.2d 26, 253 N.W.2d 493 (1977) and *Wiebke v. Richardson & Sons, Inc.,* 83 Wis.2d 359, 363–64, 265 N.W.2d 571 (1978). The Supreme Court of Wisconsin stated in *Consumer's Co-Op* that "the circumstances in which exceptions to the general rule of limited shareholder liability were described in *Milwaukee Toy* to be present where 'applying the corporate fiction would accomplish some fraudulent purpose, operate as a con-

structive fraud, or defeat some strong equitable claim....' 203 Wis. at 496, 234 N.W. 748. However, the court in *Milwaukee Toy* cautioned with the well-heeded admonition: 'the fiction of corporate entity is not to be lightly regarded.' *Id.*" 142 Wis.2d at 475, 419 N.W.2d 211. Fletcher's Cyclopedia of Corporations at § 43.10, pp. 758–59, delineates three elements to be proved in invoking the rule that where one corporation is so organized and controlled and its affairs are conducted so that it is, in fact, a mere instrumentality or adjunct of the other, the fiction of the corporate entity of the instrumentality may be disregarded:

> "(1) control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of."

*Id.* See also *CM Corp. v. Oberer Development Co.,* 631 F.2d 536 (7th Cir.1980); *Steven v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157 (7th Cir.1963).

The issue narrowly construed is therefore whether the Complaint at bar could and does set forth a viable cause of action against RHM. Fed.R.Civ.P. 8(a)(2) provides in relevant part that a pleading should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." [7] Even under the liberal pleading standards of Rule 8(a)(2), the Complaint must put the opposing party on fair notice of the nature and grounds of the claim. *Laborers Pension Fund v. Bakke Constr. Co.,* 1987 WL 19818 (N.D.Ill. Nov. 10, 1987).

---

7. The Court sees no conceivable arguments that Fed.R.Civ.P. 9(b) would apply in a situation such as at bar. *See River Road Develop. Corp. v.*

*The Carlson Corp.—Northeast,* 1990 WL 6092 (E.D.Pa. Jan. 25, 1990) p. 2–3; *Allied Corp. v. Frola,* 701 F.Supp. 1084 (D.N.J.1988).

Evaluation of each of the paragraphs of the Complaint yields the conclusion that it is devoid of the requisite allegations to encompass a claim for relief based in a "piercing the corporate veil" theory. Plaintiffs have not averred: (1) that RHM has failed to respect the separate legal identities of it and NAAS Foods, Inc., in that RHM has used NAAS Foods, Inc. as a mere instrumentality or alter ego; (2) that NAAS Foods, Inc. is now inadequately capitalized to support its operations; or (3) the substantial identity of location, ownership, and control or actions which demonstrate these indicia. "More than this is required to justify piercing the corporate veil." *Id.* at p. 2. The allegations in the Complaint not only fail to give defendant some sort of general notice about what sort of facts plaintiffs will be seeking to develop in discovery; they lack any specificity which would approach giving meaningful notice to defendants.

■ Even the mere allegation by plaintiffs that RHM "controlled" the policies of its subsidiary NAAS Foods, Inc. would be insufficient under Wisconsin law to pierce the distinct corporate forms of these entities. The plaintiffs here allege neither the extent of control nor the factual foundation required by the controlling case law. A mere possibility that a corporate parent may be involved in the decision-making process of its subsidiary is insufficient to constitute the foundation for shifting liabilities between distinct corporate entities. *Allied Programs Corp. v. Puritan Ins. Co.,* 592 F.Supp. 1274, 1277 (S.D.N.Y.1984). Courts "must require an actual factual allegation—more substantial than an intangible suspicion—before [they] loose the judicial process, and the expense of discovery and depositions, on the defendant." *Laborers Pension Fund* at p. 5; *see also id.,* at p. 6, quote from *American Comm. Assoc. v. Retirement Plan for Employees of RCA Corp.,* 488 F.Supp. 479 (S.D.N.Y.1980).

Under Wisconsin law, this Court is not bound by plaintiffs' characterization of their cause of action. *Martin v. Liberty Mut. Fire Ins. Co.,* 97 Wis.2d 127, 293 N.W.2d 168, 171 (1980). But focusing on the type of activity causing the alleged damages results in the same analysis and conclusion, as the actions pleaded do not in anyway implicate RHM or raise to the level of requiring a disregard of the corporate form. The allegations contained in the Complaint insufficiently charge RHM with using NAAS Foods, Inc. as an instrumentality, or maintaining improper control or dominance over it. The removing party bears the burden of establish federal jurisdiction. *B., Inc.* Thus, with an allegation such as the one at bar, defendants bear the burden of proving that the joinder of the resident defendant RHM was fraudulent. This Court finds there is no possibility of a valid cause of action being set forth against the in-state defendant because on the face of their Complaint, plaintiffs have failed to proffer the requisite factual allegations such that an "arguably reasonable basis" would exist that Wisconsin state law might impose liability on RHM.

The defendants correctly conclude that the plaintiffs have failed to properly allege grounds for piercing the corporate veil of NAAS Foods, Inc. Consequently, having failed to establish any independent grounds of liability as to RHM, the Court determines that RHM, under the legal framework delineated above, has been fraudulently joined as a defendant. Evaluating the factual allegations of the Complaint in a light most favorable to the plaintiffs, and resolving all contested issues of substantive fact in favor of the plaintiffs, this Court determines that there is no possibility of a valid cause of action being set forth against RHM pursuant to the requirements of *Consumer's Co-op.* Although seemingly confronted with the quandry of a liberal construction of the plaintiff's pleadings under the fraudulent joinder analysis, and the strict requirement of unusual circumstances to pierce the corporate veil, *North American Plastics Inc. v. Inland Shoe Mfgr. Co., Inc.,* 592 F.Supp. 875, 879 (N.D. Miss.1984), the Court concludes that the lack of any allegations along these lines means that no claim lies against RHM. That courts differ as to whether the pleadings should be pierced in the determination of the cognizability of the cause of action

against the in-state defendant has no effect on this analysis and result, in that plaintiffs have proffered no further factual support or allegations for piercing the corporate veil.

### 2. Defendants' Second Reason Not to Remand: Inapplicability of the Voluntary/Involuntary Distinction

■■■ Complete diversity of citizenship must be established at the time of removal. Even so, an action may not be removable depending on whether the nondiverse party is eliminated from the state action by voluntary or involuntary dismissal. *Higgins v. E.I. du Pont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1988). The Fourth Circuit summarized the "voluntary/involuntary" distinction in the removal context in that case:

> If the plaintiff voluntarily dismissed the state action against the non-diverse defendant, creating complete diversity, the state action may be removed because there is no risk that diversity will be destroyed later on. The voluntary act has demonstrated the plaintiff's desire not to pursue the case against the non-diverse party. However, this is not the situation if the non-diverse party has been involuntarily dismissed by order of the state judge. The plaintiff may choose to appeal the dismissal. Although complete diversity may temporarily exist between the parties, suggesting that removal is proper, diversity jurisidction may ultimately be destroyed if the state appellate court reverses the dismissal of the non-diverse party. Therefore, some cases are not removable despite complete diversity between the parties. Although disagreement exists whether the involuntary/voluntary distinction survived the 1949 amendment to § 1446, the trend appears to retain the distinction. *See* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3723, at 317 (1985).

*Id.* *See, e.g., O'Rourke v. Communique Telecommunications, Inc.*, 715 F.Supp. 828, 829 (E.D.Mich.1989) (diversity created by court order granting motion for summary disposition, thereby dismissing the lone nondiverse defendant; removal judged to be improper).

The voluntary/involuntary distinction has a long history that Judge Mills of the United States District Court for the Central District of Illinois has related well in *Ushman by Ushman v. Sterling Drug, Inc.*, 681 F.Supp. 1331, 1333–35 (C.D.Ill.1988). A repetition of that history is unnecessary. Nevertheless, two conclusions can be drawn from it: (1) courts that have examined the distinction have determined that it survived the 1949 amendment to 28 U.S.C. § 1446; *see, e.g., In re Iowa Mfrg. Co. of Cedar Rapids, Iowa*, 747 F.2d 462, 464 (8th Cir.1984); *Self v. General Motors Corp.*, 588 F.2d 655, 658 n. 4 (9th Cir.1978); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir.1967); *DeBry v. Transamerica Corp.*, 601 F.2d 480, 488 (10th Cir.1979);[8] and (2) dual policy justifications provide the foundation for the distinction: (a) the desire to avoid a transfer of a case to federal court where the removal is premised on developments in the state court that could later be reversed by a state appellate court, thereby relegating the parties to their nondiverse positions originally pleaded in the Complaint (as quoted above from the *Higgins* case); this will be referred to as the "finality/appealability" rationale; and (b) the generally accepted proposition that plaintiff controls the choice of forum throughout the proceedings; *Great Northern Ry. Co. v. Alexander*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918), *Aydell v. Sterns*, 677 F.Supp. 877, 880 (M.D.La.1988); this will be referred to as the "control" rationale.

■■■ It would follow from a simple application of the voluntary/involuntary distinction to the facts in this case that remand

---

**8.** The defendants' argument regarding the "plain meaning" of § 1446(b) as part of its second reason is specious in that it fails to consider case law interpreting the relevant federal statute. That case law recognizes the "voluntary/involuntary" distinction and applies it in cases such as the one *sub judice*. A court cannot read a statute without considering published case law interpreting the meaning of the statute. Defendants' argument would emasculate part of a federal court's interpretive function. *See* L. Carter, Reason in Law 47–100 (1979).

would be proper. The plaintiffs pleaded a claim against RHM, plaintiffs appeared at a hearing on the summary judgment motion in opposition, and filed a response to defendants' motion.[9] As in *O'Rourke* and many other district court decisions, it would appear that allowing removal would be incorrect. Yet the viability of the voluntary/involuntary distinction is suspect after this Court's fraudulent joinder analysis above in part II.B.1. An evaluation of the two policies underlying the distinction is appropriate.

■ The "finality/appealability" rationale carries no weight in this case, as this Court's fraudulent joinder analysis has eliminated the resident defendant RHM. This determination is the law of the case; thus later state court developments are of no moment, and the policy rationale of these developments relegating the parties to their nondiverse positions originally pleaded does not exist. The "control" rationale is also bankrupt. The policy favoring a plaintiff's right to determine the forum has been recognized only absent fraudulent joinder. *Insinga v. LaBella,* 845 F.2d 249, 253, 254 (11th Cir.1988); *Abels v. State Farm Fire & Cas. Co.,* 694 F.Supp. 140, 143 (W.D.Pa.1988); *Cook v. PepBoys,* 641 F.Supp. 43, 45 (E.D.Pa.1985). This conclusion follows directly: if the dismissed nondiverse parties were joined "fraudulently" at the inception of the action, the voluntariness (or lack thereof) of their dismissal is immaterial, as the plaintiff's right to determine the removability of his case is lost because the nondiverse parties should not have been included in the first place. In other words, if a nondiverse party is found to have been fraudulently joined in state court, joinder may be ignored for purposes of determining whether an action was properly removed to federal court, and the plaintiff's control of the choice of forum as a criterion is invalidated.

As in *Insinga* and *Abels,* this Court determines that the fraudulent joinder exception to the voluntary/involuntary distinction controls the outcome of the motion to remand. An evaluation of the two policies that support the voluntary/involuntary rule demonstrates that neither of them support the application of the distinction to the facts before the Court. The involuntary nature of the dismissal of defendant RHM does not preclude removal in this case after this Court's determination that as a resident defendant RHM was never properly before it, considering the plaintiffs' pleading. Consequently, the plaintiffs' motion to remand this action to state court will be denied.

## III. DEFENDANTS' MOTION TO COMPEL

The relevancy requirement on most discovery materials is very low. All a party must assert is that the materials, according to the standard of Fed.R.Civ.P. 26(b)(1), "regard[ ] any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." Further, according to Rule 26(b)(1), the information need only "appear[ ] reasonably calculated to lead to the discovery of admissible evidence."

■ Plaintiff Poulos first refuses to produce his tax returns and other financial

---

9. The defendants' argument in support of its third reason that a "constructive voluntary termination" of Poulos's case against RHM occurred when he mounted a token resistance to RHM's summary judgment motion is weak. A response to the summary judgment motion of RHM, however "token," takes plaintiffs' actions outside of the meaning of the word "voluntary." To constitute a voluntary abandonment, there must be a definite or unequivocal expression of intent to discontinue the action against the nondiverse party. *Delatte v. Zurich Ins. Co.,* 683 F.Supp. 1062, 1063 (M.D.La.1988) (citing *Erdrey v. American Honda Co., Inc.,* 96 F.R.D. 593, 599 (M.D.La.1983), *modified on other grounds,* 558 F.Supp. 105 (M.D.La.1983)). Plaintiffs have expressed no such intent. Accordingly, this Court will not impute a termination of plaintiffs' case against RHM. Plaintiffs pleaded a claim against RHM, plaintiffs appeared at a hearing on the summary judgment motion in opposition, and filed a response to defendants' motion. Applying defendants' "plain meaning" evaluation, these actions cannot be characterized as "voluntary."

information for the years 1984–1989. Poulos failed to object in January of 1990 when his answers to the document requests were due. Further, plaintiffs' counsel apparently stated that the documents would be produced. July 5, 1990 Flanagan Affidavit Ex. D. These tax returns are relevant to determine the economic interdependence between Poulos, suing in his individual capacity and claiming that he is a dealer under the WFDL, and NAAS Foods, Inc., to determine whether he is a dealer. *See Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis.2d 593, 605–06, 407 N.W.2d 873 (1987) (to determine if a "community of interest" exists, court focuses in part on financial interdependence of grantor and dealer). Plaintiff Poulos cannot grant himself a protective order as to this information, as the Court's determination, not his, of relevancy controls, and defendant NAAS Foods, Inc. is entitled to verify the statements Poulos has made regarding his income level. Plaintiffs' "qualified privilege" argument is not dispositive, as such a privilege does not control if the documents are relevant and there are not other reasonable means to ascertain the information. *Beller v. Credit Alliance Corp.*, 106 F.R.D. 557, 559 (N.D.Ga.1985). Further, it is the plaintiffs who have placed Poulos's income at issue: Poulos has sued NAAS Foods, Inc., alleging he is a dealer under the WFDL, and that his termination violated that statute; Poulos's income from other sources is at issue in determining the amount of sales revenue and income that the dealer generates from the sale of the grantor's produce as compared to all other sources of revenue for the dealer.

■ The same low threshold of relevancy compels plaintiff Poulos to answer the deposition queries regarding the extent of and prognosis for his 1988 hip surgery. The nature of a traveling sales broker position implicates the health of the person who fills that position. By agreeing that plaintiff Poulos would undergo an examination regarding his hip, plaintiffs have conceded *de facto* that Mr. Poulos's health is a viable issue and discovery on that issue is relevant.

■ Because both of these areas are relevant in that they involve issues material to this action, discovery should go forward on them. The defendants' motion to compel will be granted. Pursuant to Fed. R.Civ.P. 37(a)(4), the defendants are awarded their fees and costs for having to bring this motion. Plaintiffs' refusal to produce the tax returns and respond to questions regarding his injury was not "substantially justified." The defendants are to submit by affidavit a delineation of their *reasonable* estimate as to the fees and costs expended in bringing this motion. The defendants are cautioned that an excessive request will not be accepted; thus, requested costs and fees should include the number of hours worked, the rate at which the attorney bills, and a reasonably detailed explanation of the nature of the work.

## IV. SUMMARY

A plaintiff cannot defeat a defendant's right of removal on the basis of diversity of citizenship by the fraudulent joinder of a nondiverse defendant against whom the plaintiff has no real cause of action. Further, applying the voluntary/involuntary distinction in the removal context yields the conclusion that RHM's dismissal in state court was involuntary. Yet an examination of the underlying policies of the voluntary/involuntary distinction vitiates its *strength as a reason to remand, as none of* the underlying rationales for the rule are viable considering the Court's fraudulent joinder analysis. Accordingly, the Court DENIES the plaintiffs' motion to remand, and GRANTS the defendants' motion to compel. Fees and costs are granted to the defendants on the motion to compel.

A status report to discuss the future prosecution of this action will take place at 3:30 p.m. on Thursday, September 20, 1990 in Room 390, Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin.

SO ORDERED.