990 F.2d 323
 Stanley M. GOTTLIEB, individually and on behalf of all
others similarly situated, Plaintiff-Appellant,
v.
WESTIN HOTEL COMPANY, a Delaware corporation, Westin Realty
Corporation, a Delaware corporation, Westin Hotels Limited
Partnership, a Delaware limited partnership, Westin St.
Francis Limited Partnership, a Delaware limited partnership,
Westin Chicago Limited Partnership, a Delaware limited
partnership, St. Francis Hotel Corporation, 909 North
Michigan Avenue Corporation, Merrill Lynch, Pierce, Fenner &
Smith, Inc., and Smith Barney, Harris Upham & Company, Inc.,
Defendants-Appellees.
 No. 92-1234.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 1, 1992.
Decided April 2, 1993.
 
 Ronald A. Schy (argued), Laurence M. Landsman, Beigel & Sandler, Chicago, IL, for plaintiff-appellant.
 David L. Carden, Lee A. Russo (argued), Robert C. Micheletto, Jones, Day, Reavis & Pogue, Chicago, IL, for Westin Hotel Co., Westin Realty Corp., Westin Hotels Ltd. Partnership, Westin St. Francis Ltd. Partnership, Westin Chicago Ltd. Partnership, St. Francis Hotel Corp., and 909 North Michigan Avenue Corp., defendants-appellees.
 Alan N. Salpeter, Lillian K. Miller, Mayer, Brown & Platt, Chicago, IL, for Merrill Lynch, Pierce, Fenner & Smith, Inc., and Smith Barney, Harris Upham & Co. Inc., defendants-appellees.
 Before CUMMINGS and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 On July 9, 1991, Stanley M. Gottlieb[1] filed a complaint in the Circuit Court of Cook County, Illinois against Westin Hotel Company and eight others. Plaintiff alleged that he acted on behalf of himself and a class consisting of investors who purchased units in the Westin Hotels Limited Partnership ("the WHL Partnership"), one of the named defendants. Two other defendants were Westin St. Francis Limited Partnership and Westin Chicago Limited Partnership. These three limited partnerships are significant on this appeal because if they had not been named as defendants, diversity jurisdiction would exist. Their presence prevents diversity.
 
 
 2
 Defendants filed a Notice of Removal to federal district court, claiming diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. They conceded that diversity of citizenship was not present if the three partnerships were considered, but asserted that any citizenship ascribed to the three defendants should be disregarded "since those defendants were, in a legal sense, fraudulently joined as defendants for the purpose of attempting to defeat the removal jurisdiction of this Court."
 
 
 3
 Plaintiff moved for remand, denying both fraudulent joinder of the partnerships and that the amount in controversy exceeded $50,000. Judge Holderman found that fraudulent joinder had not been shown and ordered a remand. Gottlieb v. Westin Hotel Co., No. 91 C 5148, 1991 WL 281155 (N.D.Ill. Dec. 30, 1991) ("Mem.Op."). He found that there was at least a possibility that a state court would find that the three partnerships were "person[s] by or on behalf of whom said sale was made" and therefore fraudulent joinder had not been shown. Mem.Op. at 4 (brackets in original).
 
 
 4
 Plaintiff also asserted that defendants lacked a reasonable basis for removal, and that Rule 11 sanctions should be imposed against the attorneys who signed the Notice of Removal. Judge Holderman first found that the defendants had presented a good faith argument regarding the amount in controversy. Mem.Op. at 5-6. With respect to defendants' claim of fraudulent joinder, he concluded that "[a]lthough this is a close case for purposes of Rule 11, the court is convinced that the argument was made in good faith based on the facts." Mem.Op. at 6-7. He denied sanctions.
 
 I. BACKGROUND
 
 5
 Plaintiff's complaint alleged, among other things, violations of the Illinois Securities Law of 1953, Ill.Rev.Stat., ch. 121 1/2 p 137.1 et seq.; the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat., ch. 121 1/2 p 261, et seq.; common law fraud; and breaches of fiduciary duty. This class action was brought on behalf of approximately 9,500 investors in the WHL Partnership. In addition to the three partnerships, the defendants are the Westin Hotel Company, Westin Realty Corporation, St. Francis Hotel Corporation, 909 North Michigan Avenue Corporation, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and Smith Barney, Harris Upham & Company, Inc. ("Smith Barney").
 
 
 6
 According to the complaint, Gottlieb and other investors purchased limited partnership interests in the WHL Partnership from Westin Realty Corporation.[2] The WHL Partnership was formed for the purpose of owning and operating, through the St. Francis and Chicago Limited Partnerships (collectively, the "hotel partnerships") two hotels and the land on which they are located (the "hotels"). The hotels were directly owned by the hotel partnerships, of which the WHL Partnership is the sole limited partner. The WHL Prospectus (the "Prospectus") provides that:
 
 
 7
 [a]s a result of the transactions described [in the Prospectus], investors will own the entire limited partnership interest in the [WHL] Partnership, and the [WHL] Partnership, through its interest in the Hotel Partnerships, will own, control, finance, operate and deal with the Hotels. The two-tier structure, rather than direct ownership of the Hotels, is intended to permit the [WHL] Partnership to acquire the beneficial ownership and control of the Hotels....
 
 
 8
 Prospectus, at 27. Gottlieb alleged that he purchased his interest in the WHL Partnership "in reasonable reliance on the [o]ffering [m]aterials," Complaint p 20, at 7, and that these offering materials contained misrepresentations and omissions of material fact. Complaint p 23-37, at 8-14. In particular, Gottlieb alleged in Count I of the complaint that "the defendants, singly and in concert, and in connection with the purchase or sale of securities, did knowingly, willfully or recklessly" make untrue statements of material fact and omit to state material facts necessary to make the statements not misleading, employ manipulative, deceptive and fraudulent devices, schemes and artifices to defraud, and engage in acts, practices, and a course of conduct which operated as a fraud and deceit. Complaint p 48, at 16-17. Gottlieb alleged that this conduct constituted a violation of the Illinois Securities Law, Ill.Rev.Stat., ch. 121 1/2 p 137.1 et seq. Gottlieb provided notice to the defendants of his election to rescind his purchases and demanded damages in the amount of his investment, plus interest from the date of purchase, lost use of funds, consequential damages, and costs and attorneys' fees incurred by bringing the action. Complaint pp 49-52, at 17.[3]
 
 
 9
 Under the Illinois Securities Act, joint and several liability exists by and among, inter alia, any "person by or on behalf of whom said sale was made." Ill.Rev.Stat., ch. 121 1/2 p 137.13 A. The defendants had argued that since Westin Realty, and not the WHL Partnership itself, acquired and sold the limited interests in the WHL Partnership, the limited partnerships were not persons by or on behalf of whom the sales were made. Judge Holderman noted the defendants' concession that "the original monies received from the limited partners [were] used to finance the acquisition and operations of the Hotels." He concluded that because the two-tier ownership structure gave the hotel partnerships direct ownership of the hotels and gave the WHL Partnership beneficial ownership and control of the hotels, "there is at least a possibility that a state court would find that the defendant limited partnerships were 'person[s] by or on behalf of whom said sale was made.' " Mem.Op. at 4 (bracket in original).
 
 II. RULE 11 STANDARDS
 
 10
 Under Federal Rule of Civil Procedure 11, every pleading, motion, or paper of a party represented by an attorney must be signed by the attorney of record. That signature constitutes a certificate by the signer,
 
 
 11
 that the signer has read the pleading, motion, or paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
 
 
 12
 Fed.R.Civ.P. 11. Where a pleading, paper or motion is signed in violation of this rule, the court "shall" impose an appropriate sanction upon the person who signed it. Fed.R.Civ.P. 11. "[A]n attorney [must] make a reasonable inquiry into the factual and legal basis for the claims asserted. The failure of an attorney to make an objectively reasonable investigation of the facts underlying a claim or the applicable law justifies the imposition of sanctions." In re Ronco, Inc., 838 F.2d 212, 217 (7th Cir.1988) (citation omitted). Where counsel's inquiry was objectively reasonable under the circumstances of the case, however, Rule 11 sanctions are inappropriate. Fed. Deposit Ins. Corp. v. Tekfen Constr. & Installation Co., 847 F.2d 440, 442 (7th Cir.1988). As with any other pleading filed in federal court, Rule 11 applies to a notice of removal. See e.g., Hewitt v. City of Stanton, 798 F.2d 1230 (9th Cir.1986).
 
 
 13
 We review a district court's grant or denial of Rule 11 sanctions only for an abuse of discretion. Chambers v. NASCO, Inc., --- U.S. ----, ----, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991); Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 886 (7th Cir.1992); Kotsilieris v. Chalmers, 966 F.2d 1181, 1183 (7th Cir.1992). "If the district judge makes an error of law in assessing the legal merits of the party's case, that error may, of course, by itself, constitute an abuse of discretion." In re Ronco, 838 F.2d at 217.
 
 III. DISCUSSION
 
 14
 Gottlieb contends that attorneys David L. Carden and Lillian Miller should have been sanctioned for removing this action to federal court because they did not have a reasonable basis for arguing either that the WHL Partnership was fraudulently joined to defeat diversity jurisdiction or that the amount in controversy exceeded $50,000. Gottlieb additionally contends that Judge Holderman abused his discretion by failing to apply an "objective" test of reasonableness to defense counsel's conduct, and that had he applied the proper test, Rule 11 sanctions would have been imposed.
 
 
 15
 Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent. In determining whether there is diversity of citizenship, parties fraudulently joined are disregarded. See Rose v. Giamatti, 721 F.Supp. 906, 913 (S.D.Ohio 1989); Bodine's Inc. v. Federal Ins. Co., 601 F.Supp. 47, 48-49 (N.D.Ill.1984); Poulos v. NAAS Foods, Inc., 132 F.R.D. 513, 516 (E.D.Wis.1990). Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts. Poulos, 132 F.R.D. at 516. The defendants did not allege that there was outright fraud in the pleading. Rather, it was the defendants' contention that Gottlieb could state no cause of action against the limited partnerships.
 
 
 16
 In Count I of the complaint, Gottlieb, on behalf of the putative class, alleged that the defendants violated Section 137.13 A of the Illinois Securities Act and sought rescission of the entire limited partnership transaction. Section 137.13 A provides, in pertinent part:
 
 
 17
 Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making such sale, and in case such issuer, controlling person, underwriter or dealer is a corporate or, unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making such sale, shall be jointly and severally liable to such purchaser....
 
 
 18
 Ill.Rev.Stat., ch. 121 1/2, p 137.13 A (emphasis added).[4] Was it reasonable for the defendants to argue that the limited partnerships were not the "person by or on behalf of whom said sale was made"?[5] The defendants contend that the limited partnerships do not satisfy this definition because it was Westin Realty, and not the limited partnerships, that divided the limited partnership interest into 135,600 units and sold these interests to investors, that it was Westin Realty that obtained all of the proceeds of the sale of the limited partnership units to investors, and that the proceeds from the sale of limited partnership units was not used in the business of any of the limited partnerships. In addition, the defendants assert that, "as the selling unitholder, Westin Realty was the only defendant to execute the subscription agreements and consequently is the only defendant who can provide the rescissionary relief sought by plaintiff in this case." Notice of Removal, at 7 n. 3. Because Gottlieb can state no cause of action against the limited partnerships, the defendants contend, they should have been disregarded for diversity purposes.
 
 
 19
 In his complaint, Gottlieb makes no specific allegation as to any conduct, misrepresentation or omission engaged in by the limited partnerships that induced the investors to purchase the limited partnership units. Nor does Gottlieb allege that the limited partnerships caused any injury to the investors. To the contrary, Gottlieb specifically contends that he relied upon the material misrepresentations and omissions contained in the offering materials. However, these materials were produced and distributed by Westin Realty, with the assistance of Merrill Lynch and Smith Barney. Based on the facts available, it appears that the limited partnerships played no role in the creation or sale of the partnership units.
 
 
 20
 The defendants additionally argued that the fact that Gottlieb seeks rescission in this case does not make the WHL Partnership a proper party. If rescission were awarded, the defendants argued, Westin Realty, not the WHL Partnership, would be responsible for repurchasing the limited partnership interests. Westin Realty would then be the sole limited partner of the WHL Partnership, leaving the partnership intact and unaffected. Gottlieb does not allege in his complaint nor elaborate here as to what, in particular, the WHL Partnership would be ordered to do if rescission were awarded.
 
 
 21
 Our task, of course, is not to decide whether Judge Holderman was correct in concluding that the plaintiff class may possibly have a cause of action against one or more of the partnerships, treated as entities. Rather, our role is to decide whether the defendants' claim to the contrary was so clearly foredoomed by reasonable inquiry into the law and the facts that Judge Holderman abused his discretion in denying sanctions. Given the complexity of the structure of the transaction discussed above, we are not persuaded that reasonable inquiry would inexorably have led to the conclusion that the partnerships could not be disregarded.
 
 
 22
 Moreover, as a practical matter, it is unclear what purpose Gottlieb had in naming the limited partnerships as defendants in this action. The general partner of the WHL Partnership is Westin Realty, already a named defendant. Likewise, the general partners of the hotel partnerships are the hotel corporations, who are already named defendants. What advantage is gained by again reaching the interests of those defendants by naming the partnerships? Additionally, the limited partners of the WHL Partnership are the investors themselves, most of whom are members of the plaintiff class. What benefit is sought by the plaintiff class in reaching the interests of class members as limited partners?
 
 
 23
 Gottlieb additionally argues that the district judge applied a subjective, rather than objective, test of reasonableness to defense counsel's conduct. The sole indicium relied upon by Gottlieb is the judge's use of the term "good faith" when he stated that the defendants' "argument was made in good faith based on the facts." Mem.Op. at 7. Although an objective test is applied to determine whether counsel made a reasonable inquiry into the factual and legal basis of the claims asserted, In re Ronco, Inc., 838 F.2d at 217; Fed. Deposit Ins. Corp., 847 F.2d at 442, there remains a subjective component under Rule 11 as well. Rule 11 requires that the pleading be "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." The rule additionally requires that the pleading not be interposed for "any improper purpose." See Local 232, Allied Indus. Workers v. Briggs & Stratton Corp., 837 F.2d 782, 789 n. 5 (7th Cir.1988) (Rule 11 involves both an objective and subjective standard); Brown v. Fed'n of State Medical Bds., 830 F.2d 1429, 1436 (7th Cir.1987) (subjective bad faith may be important when suit is objectively colorable); see also Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 930 (7th Cir.1989) (en banc) (we apply deferential standard of review "whether the question be frivolousness on the objective side of Rule 11 or bad faith on the subjective side"). In any event, we do not interpret Judge Holderman's use of the term "good faith" as implying that he did not apply the objective test in deciding whether counsel had made reasonable inquiry as a foundation for their theory.
 
 
 24
 In a sole footnote, Gottlieb argues that the defendants' allegation that the amount in controversy requirement was satisfied was frivolous. Appellant's Brief, at 7 n. 2. In the complaint, Gottlieb sought rescission of the limited partnership interests without specifying a dollar amount, although Gottlieb asserts that no individual class member meets the jurisdictional limit. In its Notice of Removal, the defendants alleged that the amount in controversy exceeded the sum of $50,000:
 
 
 25
 [T]his action seeks to enforce a purported joint and common right of plaintiff and the class members, the limited partners of the Partnership, to have $135.6 million limited partnership transaction rescinded. In addition, the cost to defendants of compliance with the equitable relief sought in this action easily exceeds the value of $50,000. Indeed, if defendant Westin Realty is forced to rescind this transaction, alternative financing will have to be obtained. The cost of that refinancing, alone, will be in excess of $50,000. Moreover, the attorneys' fees and punitive damages sought in this action exceed the sum of $50,000.
 
 
 26
 Notice of Removal p 15, at 7-8. In response to Plaintiffs' motion to remand and motion for sanctions, the defendants argued that the amount in controversy should be evaluated from an "either viewpoint" rule in cases involving declaratory or injunctive relief, whereby the amount in controversy would be measured by the cost to the defendant of enforcing the right sought by the plaintiff.
 
 
 27
 Judge Holderman noted that this circuit has accepted the "either viewpoint" rule in McCarty v. Amoco Pipeline Co., 595 F.2d 389, 395 (7th Cir.1979). In McCarty, the plaintiff sought to enjoin the defendant from using its land for pipeline and an order requiring the defendant to remove pipelines. We held that the interests of equity and fairness "would ... be well served by allowing the plaintiff's claim to be evaluated for jurisdictional purposes by applying the either viewpoint rule." Id. at 395. Judge Holderman questioned the application of the "either viewpoint" rule in the context of a class action, but concluded that because McCarty cited Committee for G.I. Rights v. Callaway, 518 F.2d 466 (D.C.Cir.1975), a case applying the "either viewpoint" rule to a class action, the defendants had presented "a good faith argument" concerning the amount in controversy. Mem.Op. at 5-6.
 
 
 28
 We agree with the district judge that there was some authority for the defendants' allegation. As well, Gottlieb does not challenge defendants' assertion that the cost of compliance if rescission were ordered would exceed $50,000. Judge Holderman did not abuse his discretion in deciding that defendants presented a good faith argument regarding the amount in controversy. We cannot conclude that the district judge's denial of Rule 11 sanctions was an abuse of his discretion.
 
 
 29
 For the foregoing reasons, we AFFIRM.
 
 
 
 [1]
 Gottlieb is a resident and citizen of California
 
 
 [2]
 According to Gottlieb's complaint, defendant St. Francis Corporation owned and operated the Westin St. Francis hotel in San Francisco. It formed the St. Francis Limited Partnership, to which it contributed all of its rights, title and interest in the St. Francis hotel in exchange for all of the St. Francis Partnership's general and limited partnership interests. Complaint p 17. Similarly, defendant 909 Corporation initially owned and operated the Westin Chicago hotel. It formed the Chicago Limited Partnership, to which it contributed all of its rights, title and interest in the Westin Chicago hotel in exchange for all of the general and limited partnership interests in the limited partnership. Id
 Prior to contributing the hotels to the hotel limited partnerships, the hotel corporations obtained mortgage loans in the amount of $116.15 million. Complaint p 19. The hotel corporations sold the limited partnership interests in their respective hotel limited partnerships to defendant Westin Realty, a wholly-owned subsidiary of defendant Westin, for the aggregate purchase price of $135.6 million. Complaint p 18. Each hotel corporation retained its general partnership interest in, and remained the sole general partner of, the respective hotel limited partnerships. Id.
 Westin Realty formed the WHL Partnership, becoming its sole general partner, and contributed to the WHL Partnership all of the limited partnership interests it had acquired in the hotel limited partnerships in exchange for all of the limited partnership interests in the WHL Partnership. Complaint p 20. Westin Realty, through defendants Merrill Lynch and Smith Barney, then sold to investors its entire limited partnership interest in the WHL Partnership and continued as its sole general partner. Complaint pp 20, 23. Westin Realty sold 135,600 Partnership units for $1,000 per unit, with a required minimum purchase of five units. Complaint p 20. The 135,600 partnership units constituted Westin Realty's entire limited partnership interest in the WHL Partnership; Westin Realty continued as the partnership's general partner. It is this sale the putative class seeks to rescind.
 
 
 [3]
 Paragraph 137.13 of the Illinois Securities Law liability:
 (1) for the full amount paid, together with interest from the date for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by such purchaser on such securities, upon tender to the seller or into court of the securities sold or, where the securities were not received, of any contract made in respect of such sale; or
 (2) if the purchaser no longer owns the securities, for the amounts set forth in clause (1) of this subsection A less any amounts received by the purchaser for or on account of the disposition of such securities.
 If the purchaser shall prevail in any action brought to enforce any of the remedies provided in this subsection, the court shall assess costs together with the reasonable fees and expenses of the purchaser's attorney against the defendant....
 Ill.Rev.Stat., ch. 121 1/2 p 137.13 A. Notice of any election provided for in subsection A must be given by the purchaser within 6 months after the purchaser has knowledge that the sale of the securities is voidable. Ill.Rev.Stat., ch. 121 1/2 p 137.13 B.
 
 
 [4]
 On appeal, Gottlieb contends that the WHL Partnership is the "issuer" of the securities in which the class invested. Gottlieb did not specifically raise this issue in the court below, and the district court did not discuss it. We need not address it for the first time on appeal
 
 
 [5]
 A "person" is defined as an individual, corporation, partnership, association, joint stock company, trust or any unincorporated organization. Ill.Rev.Stat., ch. 121 1/2 p 137.2-3