Elton **HOUSTON** and Robert Brown, Plaintiffs,

v.

Cecil **PARTEE**, et al., Defendants.

No. 90 C 3342.

United States District Court, N.D. Illinois, E.D.

Nov. 6, 1991.

Thomas Peters, Rick Halprin and Susan Shatz, Chicago, Ill., for plaintiffs.

Kelly R. Welsh, Corp. Counsel, City of Chicago, David R. Zinder, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's March 7, 1991 memorandum opinion and order (the "Opinion," 758 F.Supp. 1228) has set out the distressing facts as to the four years' imprisonment that were suffered by plaintiffs Elton Houston ("Houston") and Robert Brown

("Brown")[1] even though they were innocent—and even after they were assertedly *known* by law enforcement personnel to be innocent—of the murder for which they were serving time. For the reasons stated in the Opinion, this Court sustained the Houston–Brown Complaint, filed under 42 U.S.C. § 1983 ("Section 1983"), against attack by prosecutors who had allegedly learned of Houston's and Brown's innocence during the pendency of their post-conviction proceedings.[2] Opinion at 1229 emphasized, as a critical factor in rejecting the prosecutors' claim of absolute immunity, their allegedly false representations to the Illinois Appellate Court as part of their deliberate suppression of the truth as it had become known to them.

Now the other defendants named in the Fifth Amended Complaint—four police officers (collectively the "Officers")—have moved to be dismissed on immunity grounds, this time under the doctrine of qualified immunity. This opinion will not repeat the facts set out in the Opinion, but instead will include references only to any additional allegations that bear on the claim against the Officers.

### Legal Standard

▇ *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) teaches that qualified immunity questions should be addressed at the threshold—even before discovery is launched. And *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citation omitted) elaborates on what the criterion is for determining whether a basis for Section 1983 liability was "clearly established" when the defendant acted to infringe plaintiff's constitutional rights:

It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.[3]

▇ It is important to remember that a person's legal "right" does not exist in a vacuum, but rather as one side of a coin whose obverse side is "duty"—the familiar Hohfeldian pairing. And so it is not enough for a Section 1983 plaintiff's right against some potential class of Section 1983 defendants to have been "clearly established," when it is a state actor in some other category who actually engaged in the challenged conduct. Instead the question is whether the plaintiff had a clearly established right against *that* defendant, who had a correspondingly clearly established duty not to infringe that right. As the ensuing discussing demonstrates, that distinction proves critical here.

### Application of the Standard

According to plaintiffs' counsel, such long-established authorities as *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)—which found a due process violation in the suppression of evidence favorable to a criminally accused person—provide the necessary "clearly established" constitutional right to support the Houston–Brown claim. Although *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir.1988) expressly applied the *Brady* principle to the suppression of exculpatory evidence by police officers only *after* the statement clearing Houston and Brown had become known to the Officers in this case

---

1. Brown has died on September 8, 1991 (after issuance of the Opinion). This opinion does not deal with whatever special procedural or substantive problems may be created by his death.

2. That decision by this Court is now pending on appeal before the Seventh Circuit.

3. [Footnote by this Court] Since *Anderson* our Court of Appeals has issued a number of opinions both stating and applying that standard, but for current purposes it is certainly adequate to look at the *Anderson* locution.

in 1985, plaintiffs' counsel also point to earlier case law that they say made the same right "clearly established": *Whitley v. Seibel*, 613 F.2d 682, 685–86 (7th Cir. 1980); this Court's opinion in *Palmer v. City of Chicago*, 562 F.Supp. 1067 (N.D.Ill. 1983), *rev'd in part on other grounds*, 755 F.2d 560 (7th Cir.1985); and *Martinez v. Wainwright*, 621 F.2d 184, 186 (5th Cir. 1980).[4]

█ As for Count I of the Fifth Amended Complaint, which like its predecessor versions of the Complaint charges the Officers with having *conspired* with the prosecutors to suppress the exculpatory statements, no dismissal is in order. That conclusion flows from the potential liability of the *prosecutors* under the duties that were ascribable to *them* (the subject that was dealt with in the Opinion), when coupled with the established principles of Section 1983 liability on cover-up conspiracy grounds as set out in such cases as *Hampton v. Hanrahan*, 600 F.2d 600, 620–25 (7th Cir.1979) and *Bell v. City of Milwaukee*, 746 F.2d 1205, 1255–58 (7th Cir.1984).

█ But Count III operates on the different factual premise that the police alone, and not the prosecutors, came into possession of the exculpatory statement during the pendency of the Houston–Brown post-conviction proceedings.[5] No authority—and certainly no "clearly established" authority back in 1985—imposes a duty on a police officer or someone in the equivalent position, who has learned of exculpatory evidence affecting an already-convicted individual, to search out that individual for disclosure purposes.

Both this Court's opinion in *Palmer* (562 F.Supp. at 1076) and our Court of Appeals' modification of that opinion (755 F.2d at 578) spoke of *Brady* as conferring a constitutional right to material exculpatory evidence upon the criminal defendant's *request.* And even though *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976) said post-*Brady* that where "the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made," that duty was properly ascribed to the *prosecutor* "in advance of trial, and perhaps during the course of trial" (*id.*)—while in this instance the Officers who learned of the exculpatory statements a year after the Houston–Brown convictions, while their cases were on appeal, were really strangers to their criminal case—they were not part of the prosecution team that had arrested, investigated, prosecuted and convicted Houston and Brown.[6]

In essence, counsel for Houston and Brown have attempted to replace the "clearly established" standard of *Harlow* and *Anderson* with a kind of amalgam of cases that stand for the existence of constitutional obligations under discrete and wholly distinguishable situations, tying those snippets together as though they set a single constitutional standard. Effectively counsel's argument seeks to treat all of government officialdom as a single seamless unit that became obligated—in the global sense—to inform Houston and Brown of the exculpatory information as

---

4. Counsel's citation of *Martinez* is puzzling, for that case involved suppression of exculpatory evidence by a prosecutor, not by police officers.

5. Defense counsel unfairly criticize the Houston–Brown lawyers for having advanced that claim, which is at odds with the allegations of Counts I and II that have been carried forward from the earlier drafts of the Complaint. But the Houston–Brown counsel have done so because of the deposition disclaimer of an Assistant State's Attorney of having been at the meeting at which the key witness' statement was first made clearing Houston and Brown. Not only do the Federal Rules of Civil Procedure permit

inconsistent pleadings, but the lawyers for Houston and Brown would be remiss in their duties to their clients if they had failed to cover all of the available bases once that different claimed scenario had surfaced during the discovery process (after all, a determination of what version of the events should be credited would be for the trier of fact to make).

6. Indeed, *Agurs*, 427 U.S. at 103, 111, 96 S.Ct. at 2397, 2401 distinguished even in the case of prosecutors between exculpatory information known to them during the trial and exculpatory evidence discovered only post-trial. It should be remembered that the focus in that case was on the constitutional right to a fair trial.

soon as it was learned. But as horrendous as the notion of innocent defendants languishing in prison may be, it cannot be forgotten that Section 1983 establishes a system of *individual* and not *collective* liability. And it was certainly not "clearly established" that such individual duty (and hence liability) was imposed on the Officers for not searching out Houston and Brown or their lawyers and coming forward at the time that the information allegedly came to the Officers alone.

### Conclusion

Count I of the Fifth Amended Complaint survives against the Officers, while Count III does not. Accordingly Count III is dismissed, while the rest of the pleading remains intact.