**COMMONWEALTH EDISON COMPANY, Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 15, Defendant.**

**Nos. 96 C 3989, 96 C 7295.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 31, 1996.

Brian Jeffrey Gold, Leah Ellen Pazol, Sonja L. Lengnick, Sidley & Austin, Chicago, IL, for Commonwealth Edison Co.

Robert Shorey Graettinger, Illinois Attorney General's Office, Chicago, IL, Charles A. Werner, Schuchat, Cook and Werner, St. Louis, MO, James M. Lockwood, Park Ridge, IL, for Local 15 Intern. Broth. of Elec. Workers.

## *MEMORANDUM OPINION AND ORDER*

ANDERSEN, District Judge.

Plaintiff International Brotherhood of Electrical Workers, Local Union No. 15 ("Local 15") filed suit against Commonwealth Edison Company ("ComEd"), Kincaid Generation, L.L.C. ("Kincaid"), and the Illinois Commerce Commission ("ICC") in the Circuit Court of Sangamon County, Illinois, alleging that the Asset Sale Agreement negotiated between ComEd and Kincaid for the sale of the Kincaid Generating Station (the "Generating Station") in Sangamon and Christian Counties, Illinois, is in direct violation of the Illinois Collective Bargaining Successor Employer Act, 820 ILCS 10/1. ComEd and Kincaid subsequently removed the case to the United States District Court for the Central District of Illinois where

Judge Richard Mills entered an order transferring the case to this Court. Local 15 now moves to remand this case to the Circuit Court of Sangamon County, Illinois, pursuant to 28 U.S.C. § 1447. For the following reasons, the motion to remand is denied.

## BACKGROUND

Defendant ComEd is a public utility company that provides electrical power to customers in the State of Illinois. Plaintiff Local 15 is the exclusive bargaining representative of ComEd's bargaining unit employees, including all of the bargaining unit employees at ComEd's Generating Station in Sangamon and Christian Counties, Illinois.

Local 15 and ComEd are parties to a collective bargaining agreement that governs the terms and conditions of employment for ComEd's bargaining unit employees, including all employees at the Generating Station. The collective bargaining agreement provides in part:

> This agreement shall be binding upon the parties and their respective successors and assigns. Subject to the Company obtaining all necessary approval of any governmental authority or regulatory body, including but not limited to the Illinois Commerce Commission, and except in cases of liquidation or condemnation or sale or transfer (i) to an entity which has the authority to initiate condemnation proceedings, or (ii) pursuant to any right granted prior to the date hereof, in the event the Company sells or otherwise transfers all or substantially all of its assets to another person, company, corporation, or firm during the term of this Agreement, the Company will require such purchaser or transferee to assume the obligations under this Agreement until the expiration of the term of this Agreement.

(Compl. ¶ 5; Answer ¶ 5). The agreement expires on September 30, 1997.

Defendant Kincaid is a Virginia limited liability company which operates public utility companies. On April 17, 1996, Kincaid entered into an Asset Sale Agreement (the "Sale Agreement") with ComEd for the purchase of ComEd's Generating Station in Sangamon and Christian Counties, Illinois. The Sale Agreement expressly provides that Kincaid is not required to assume ComEd's obligations under the collective bargaining agreement negotiated with Local 15. (Compl. ¶¶ 12–13; Answer ¶¶ 12–13).

The sale of the Generating Station is subject to approval by the ICC. On May 13, 1996, ComEd filed a petition with the ICC pursuant to section 7–102 of the Illinois Public Utilities Act, 220 ILCS 5/7–102, requesting the ICC's approval of the Sale Agreement. Local 15 opposes the sale and, consequently, moved to intervene in the proceedings. The ICC granted Local 15's motion to intervene in the proceedings on September 25, 1996. The proceedings before the ICC are currently pending and a ruling on ComEd's petition is not expected until February of 1997.

Local 15 objects to the sale of the Generating Station because the Sale Agreement does not require Kincaid to assume ComEd's obligations under the collective bargaining agreement negotiated with Local 15. According to Local 15, this constitutes a violation of the Illinois Collective Bargaining Successor Employer Act, 820 ILCS 10/1, (the "Illinois successor statute") which provides in part:

> Where a collective bargaining agreement between an employer and a labor organization contains a successor clause, such clause shall be binding upon and enforceable against any successor employer who succeeds to the contracting employer's business, until the expiration date of the agreement therein stated. No such successor clause shall be binding upon or enforceable against any successor employer for more than 3 years from the effective date of the collective bargaining agreement between the contracting employer and the labor organization.

820 ILCS 10/1(a). A "successor employer" is defined as "any purchaser, assignee, or transferee of a business the employees of which are subject to a collective bargaining agreement, if such purchaser, assignee, or transferee conducts or will conduct substan-

tially the same business operation, or offer the same service, and use the same physical facilities, as the contracting employer." 820 ILCS 10/1(b). The statute further provides:

> An employer who is a party to a collective bargaining agreement containing a successor clause has the affirmative duty to disclose the existence of such agreement and such clause to any successor employer. Such disclosure requirement shall be satisfied by including in any contract of sale, agreement to purchase, or any similar instrument of conveyance, a statement that the successor employer is bound by such successor clause as provided for in the collective bargaining agreement. Failure of an employer to disclose the existence of a collective bargaining agreement containing a successor clause as required by subsection (d) shall not effect the enforceability of such collective bargaining agreement against a successor employer.

820 ILCS 10/1(d). Additionally, the statute imposes a fine not to exceed $5,000 on an employer that fails to comply with its provisions. 820 ILCS 10/2.

On July 1, 1996, ComEd filed suit against Local 15 in the United States District Court for the Northern District of Illinois, Eastern Division (Case No. 96 C 3989) seeking, among other things, a declaration that ComEd has not violated the Illinois successor statute because it is completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* Jurisdiction over this action is premised on 28 U.S.C. § 1331 and 29 U.S.C. § 185. ComEd has also filed a motion for a judgment on the pleadings which is currently pending before this Court.

On July 18, 1996, Local 15 filed the instant law suit (Case No. 96 C 7295) against ComEd, Kincaid, and the ICC in the Circuit Court of Sangamon County, Illinois, alleging that the Sale Agreement between ComEd and Kincaid for the sale of the Generating Station is in direct violation of the Illinois successor statute because the Sale Agreement expressly provides that Kincaid is not required to assume ComEd's obligations under the collective bargaining agreement ne-

gotiated with Local 15. (Compl.¶¶ 17–18). Local 15 seeks an order compelling ComEd to incorporate in the Sale Agreement the terms of the current collective bargaining agreement between ComEd and Local 15 and an order that those terms and conditions are binding on Kincaid. (Compl.¶ 19). Local 15 further requests that "the Court enjoin the ICC, ComEd, and Kincaid, from the continued processing of a Petition before the ICC containing an Asset Sale Agreement with provisions that are in direct violation of an Illinois statute; that the Court enjoin the ICC from issuing an Order consenting to and/or approving a Petition for the sale of certain utility property; including the Kincaid Generating Station, by ComEd to Kincaid when the Petition contains an Asset Sale Agreement which is in direct violation of an Illinois statute." (Compl.¶ 25).

On August 9, 1996, ComEd and Kincaid filed a timely notice of removal, *see* 28 U.S.C. § 1446(b), pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185 asserting that the Illinois successor statute is completely preempted by § 301 of the LMRA. Consequently, the case was removed to the United States District Court for the Central District of Illinois. The ICC did not join in the petition for removal. ComEd and Kincaid asserted that the ICC's consent to removal was not necessary because it was fraudulently joined as a party to this suit. ComEd answered the complaint on August 16, 1996. On August 29, 1996, ComEd and Kincaid filed separate motions for a judgment on the pleadings asserting that the Illinois successor statute is preempted by § 301 of the LMRA and by the NLRA.

On September 6, 1996, Local 15 filed a timely motion to remand the case to the Circuit Court of Sangamon County, Illinois, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447. Local 15 asserted that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. Local 15 further emphasized that removal was improper because the ICC did not join in the petition for removal with ComEd and Kincaid.

Judge Richard Mills of the United States District Court for the Central District of Illinois addressed Local 15's motion to remand on October 30, 1996. He concluded:

> Because all three preemption doctrines have been raised in the Northern District case and only one has been raised here, it makes sense to consolidate these cases. It would be a waste of judicial resources to have two cases pending when the parties and the issues are nearly identical and the results of one case would be res judicata on the other. *See Kearney & Trecker Corp. v. Cincinnati Milling Mach. Co.,* 254 F.Supp. 130, 133 (N.D.Ill.1966). Furthermore, it would conserve judicial resources to have all preemption issues relating to the same statute decided in one forum.

*International Brotherhood of Electrical Workers, AFL–CIO, Local Union 15 v. Commonwealth Edison Company, Kincaid Generation L.L.C., and Illinois Commerce Commission,* No. 96–3228, slip op. at 5–6 (C.D.Ill. Oct. 30, 1996). In the interest of justice, Judge Mills transferred the case to this Court pursuant to 28 U.S.C. § 1404(a). *Id.* at 6.[1] Judge Mills also denied all pending motions as moot and granted the parties leave to refile them before this Court. *Id.*

On or about November 5, 1996, Local 15 filed the instant renewed motion to remand the case (Case No. 96 C 7295) to the Circuit Court of Sangamon County, Illinois, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447. Local 15 argues that, contrary to defendants' assertions, this case does not involve the interpretation of a collective bargaining agreement. Thus, Local 15 asserts, the Illinois successor statute is not completely preempted by § 301 of the LMRA, 29 U.S.C. § 185. Local 15 further argues that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. Additionally, Local 15 challenges removal on the grounds that the ICC failed to join the petition for removal and has not waived its sovereign immunity under the Eleventh Amendment.

## LEGAL STANDARD

The burden of establishing federal jurisdiction falls on the party seeking to preserve removal. *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 (7th Cir.1993); *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993). Any doubts regarding jurisdiction should be resolved in favor of remanding the action to state court. *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir.1976).

## DISCUSSION

Removal may be challenged either for the absence of subject matter jurisdiction or for procedural defects. 28 U.S.C. § 1447(c); *Matter of Continental Cas. Co.,* 29 F.3d 292, 293 (7th Cir.1994). Here, Local 15 challenges removal on both grounds asserting that: (1) this Court lacks subject matter jurisdiction because the Illinois successor statute is not preempted by § 301 of the LMRA; and (2) removal was improper because the ICC did not join in the petition for removal and has not waived its sovereign immunity under the Eleventh Amendment. We address each issue in turn.

### I. Subject Matter Jurisdiction: § 301 of the LMRA

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States ..." 28 U.S.C. § 1441(a). Whether this Court has subject matter jurisdiction over the present case depends upon whether this Court has "federal question" jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction extends to "all civil actions arising under the Constitution, laws, or

---

1. Local 15's action (Case No. 96 C 7295) was originally assigned to our colleague Judge Harry D. Leinenweber. On December 20, 1996, the case was reassigned to this Court and consolidated with ComEd's declaratory judgment action (Case No. 96 C 3989) on the basis of relatedness pursuant to Local General Rule 2.31.

treaties of the United States." 28 U.S.C. § 1331.

ComEd and Kincaid assert that this Court has federal question jurisdiction because Local 15's claims under the Illinois successor statute are completely preempted by § 301 of the LMRA, 29 U.S.C. § 185. Local 15, however, claims that its complaint alleges an action arising solely under Illinois law.

To determine whether federal question jurisdiction exists, a federal court must determine if the "plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420 (1983); *Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir. 1995). A defendant cannot create a federal question by asserting an issue of federal law in a pleading or in a petition for removal. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 391, 107 S.Ct. 2425, 2428–29, 96 L.Ed.2d 318 (1987). On the other hand, a plaintiff may not avoid a federal forum by drafting an essentially federal claim in terms of state law (the "artful pleading doctrine"). *Federated Dept. Stores Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981).

Federal issues which serve as a defense to a state law action (sometimes called "conflict preemption") do not confer federal question jurisdiction and therefore cannot serve as the basis for removal. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Rice,* 65 F.3d at 639. Ordinarily, as Local 15 correctly notes, federal preemption is asserted as a defense to the allegations in a complaint. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429–30; *Rice,* 65 F.3d at 639; *see also Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. at 2846–47 (case may not be removed to federal court on basis of a defense, including the defense of preemption).

ComEd and Kincaid, however, invoke the "complete preemption" doctrine in support of removal. This doctrine is a well-established exception to the well-pleaded complaint and conflict preemption rules. *Metropolitan Life,* 481 U.S. at 63, 107 S.Ct. at 1546; *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. Pursuant to the Supremacy Clause of Art. VI of the United States Constitution, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546. When Congress has completely preempted an area of state law, any attempt by a plaintiff to allege a state law claim is properly characterized from its inception as a complaint arising under federal law. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Douglas v. American Information Technologies Corp.,* 877 F.2d 565, 569 (7th Cir.1989); *Atchley v. Heritage Cable Vision Associates,* 101 F.3d 495, 498–99 (7th Cir.1996).

Congress has given § 301 of the LMRA such complete preemptive force. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Loewen Group Intern., Inc. v. Haberichter,* 65 F.3d 1417, 1420 (7th Cir.1995). Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "This section provides federal court jurisdiction over controversies involving collective bargaining agreements and also authorizes federal courts to fashion a body of federal law for the enforcement of those agreements." *Loewen,* 65 F.3d at 1421; *see also Textile Workers Union of America v. Lincoln Mills of Ala.,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Federal law must be applied when resolving such disputes to ensure uniform interpretation of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 1879–80, 100 L.Ed.2d 410 (1988); *Loewen,* 65 F.3d at 1421. "Even if a plaintiff makes no mention of § 301 in a

complaint, § 301 nevertheless may displace entirely a state cause of action, allowing removal by the defendant under the complete preemption exception to the well-pleaded complaint rule." *Atchley*, 101 F.3d 495, 498.

In order to determine whether a party's state law claims are preempted under § 301, courts must decide whether the resolution of the state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement. *Lingle*, 486 U.S. at 405–06, 407, 409–10, 108 S.Ct. at 1881–82, 1882, 1883–84. Section 301 preempts claims "founded directly on rights created by collective bargaining agreements, and also on claims substantially dependent on analysis of a collective bargaining agreement." *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2431 (*quoting International Broth. of Elec. Workers, AFL–CIO v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987)); *Loewen*, 65 F.3d at 1421. If the "heart of the [state law] complaint [is] a ... clause in the collective bargaining agreement, that complaint arises under federal law." *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2430 (*quoting Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 558, 88 S.Ct. 1235, 1236, 20 L.Ed.2d 126 (1968)).

The broad preemptive effect of § 301 does not, however, apply in every case involving a collective bargaining agreement. *Loewen*, 65 F.3d at 1421. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985); *Loewen*, 65 F.3d at 1421. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994). Rather, preemption is found only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent on an analysis of the terms of the collective bargaining agreement. *Loewen*, 65 F.3d at 1423; *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2430–31; *Lueck*, 471 U.S. at 210, 105 S.Ct. at 1910–11.

In the present case, the complaint does not allege a violation of the collective bargaining agreement but rather is based upon an alleged violation of the Illinois successor statute. ComEd and Kincaid argue that the Illinois successor statute is "inextricably intertwined" with, and dependent upon an interpretation of, the collective bargaining agreement negotiated between ComEd and Local 15 and is therefore completely preempted by § 301. We must therefore analyze the elements of the state law claim to assess whether it is founded upon the provision of a collective bargaining agreement or whether adjudication of the claim will require interpretation of the terms of a collective bargaining agreement. *See Smith v. Colgate–Palmolive Co.*, 943 F.2d 764 (7th Cir. 1991); *Bettis v. Oscar Mayer Foods Corp.*, 878 F.2d 192 (7th Cir.1989).

Local 15's complaint alleges a direct violation of the Illinois successor statute which makes a new employer liable for the obligations of a predecessor's collective bargaining agreement when that agreement contains a successor clause. (Compl.¶¶ 17, 23). The statute provides in part:

Where a collective bargaining agreement between an employer and a labor organization contains a successor clause, such clause shall be binding upon and enforceable against any successor employer who succeeds to the contracting employer's business, until the expiration date of the agreement therein stated. No such successor clause shall be binding upon or enforceable against any successor employer for more than 3 years from the effective date of the collective bargaining agreement between the contracting employer and the labor organization.

820 ILCS 10/1(a). A "successor employer" is defined as "any purchaser, assignee, or transferee of a business the employees of which are subject to a collective bargaining agreement, if such purchaser, assignee, or

transferee conducts or will conduct substantially the same business operation, or offer the same service, and use the same physical facilities, as the contracting employer." 820 ILCS 10/1(b). The statute also imposes a fine not to exceed $5,000 on an employer that fails to comply with its provisions. 820 ILCS 10/2.

Even the most cursory reading of the Illinois successor statute, on which Local 15's complaint is based, reveals that the "heart of the [state law] complaint [is] a ... clause in the collective bargaining agreement." Specifically, the collective bargaining agreement at issue in this case contains the following provision which Local 15 refers to as a "successor clause":

> This agreement shall be binding upon the parties and their respective successors and assigns. Subject to the Company obtaining all necessary approval of any governmental authority or regulatory body, including but not limited to the Illinois Commerce Commission, and except in cases of liquidation or condemnation or sale or transfer (i) to an entity which has the authority to initiate condemnation proceedings, or (ii) pursuant to any right granted prior to the date hereof, in the event the Company sells or otherwise transfers all or substantially all of its assets to another person, company, corporation, or firm during the term of this Agreement, the Company will require such purchaser or transferee to assume the obligations under this Agreement until the expiration of the term of this Agreement.

(Compl. ¶ 5; Answer ¶ 5). The meaning, application, and enforcement of this provision, and not the Illinois successor statute, is the subject of this dispute. Indeed, the statute presupposes the existence of a "successor clause" in the collective bargaining agreement. It creates no rights independent of the collective bargaining agreement itself. Resolution of this dispute will therefore require a court initially to interpret the collective bargaining agreement to determine whether it contains a "successor clause" as defined by the statute.

In *Lueck*, a worker sued his employer and the insurance company that administered the provisions of the collective bargaining agreement relating to disability benefits. The worker alleged that the defendants had refused in bad faith to honor his claim for benefits. Although the Supreme Court upheld preemption of the bad faith tort by § 301 of the LMRA, it emphasized that not every state law asserting a right that relates to a collective bargaining agreement is preempted. 471 U.S. at 210–14, 105 S.Ct. at 1911–12. Rather, only "state law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements." *Id.* at 213, 105 S.Ct. at 1912. Thus, any claim that "is inextricably intertwined with consideration of the terms of a labor contract" is preempted. *Id.*

This rule was applied by Judge Susan Getzendanner in *SR Industries Corp. v. International Ass'n of Bridge, Structural and Ornamental Ironworkers, Shopmen's Div., Local No. 473*, No. 87 C 2370, 1987 WL 17818 (N.D.Ill. Sept.25, 1987). In that case, the plaintiff corporation and defendant union negotiated a collective bargaining agreement which provided for, among other things, annual vacation benefits in accordance with a schedule based on length of employment. After the agreement expired, the company discharged the majority of its employees. In response, the union requested the payment of vacation benefits which had accrued but had not been received during the tenure of the agreement. After the company refused to pay any vacation benefits and denied there was any obligation to do so, the union filed suit in the Circuit Court of Cook County, Illinois, alleging violations of the Illinois Wage Payment and Collection Act ("IWCPA"). The IWCPA provided that, unless otherwise provided for in a collective bargaining agreement, whenever an employment contract or policy provides for paid vacations, and an employee resigns without having taken all vacation time earned, the monetary equivalent shall be paid to him or her.

The company subsequently filed its own action in federal court seeking a declaration

*Cf. Houston v. Partee,* 776 F.Supp. 1309, 1312 (N.D.Ill.1991) (holding that police officer is entitled to qualified immunity where complaint alleges failure of officer to search out convict after his conviction for purpose of disclosing recently discovered exculpatory evidence since there was not clearly established authority imposing such a duty); Stanley Z. Fisher, *"Just the Facts, Ma'am:" Lying and the Omission of Exculpatory Evidence in Police Reports,* 28 New Eng. L.Rev. 1, 44 (1993). Having impugned no constitutional right by failing to test her blood for drugs, the Deputies are good-faith immune from liability under § 1983.[13]

### c. Failure to Preserve the Original Lien Report

Plaintiff in her brief alludes to the fact that the Deputies failed to preserve exculpatory evidence, to wit: the original lien report by Wayne County Dispatch and/or Michigan State Police Dispatch. She seems to be asserting that this action constituted a violation of her substantive due process rights under the Fourteenth Amendment of the Constitution of the United States. This court holds that the Deputies did not violate any such rights, and therefore are entitled to qualified immunity.

In *California v. Trombetta,* 467 U.S. 479, 481, 104 S.Ct. 2528, 2530, 81 L.Ed.2d 413 (1984), the Supreme Court held that it.was a violation of due process to fail to preserve "material" evidence, meaning evidence that might be expected to play a role in the defense, after it is gathered and in possession of the police when two conditions are met. First, the evidence must "possess an exculpatory value that was apparent before the evidence was destroyed," and second, it "must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534. Moreover, the Supreme Court held that failure to preserve evidence that is *potentially* exculpatory violates due process if the police acted in bad-faith. *Arizona v. Youngblood,*

488 U.S. 51, 58–59, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988), *reh'g. denied,* 488 U.S. 1051, 109 S.Ct. 885, 102 L.Ed.2d 1007 (1989). What is clear in either situation however is that the evidence must be of more than speculative exculpatory value. The Fourteenth Amendment does not impose "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58, 109 S.Ct. at 337. In the case at hand, there is no evidence of any kind that this so-called lien report was indeed exculpatory. It is pure conjecture whether the lien report would play a role in the exoneration of plaintiff. When "there is no indication that there was anything exculpatory about destroyed evidence, due process has not been violated." *United States v. Jobson,* 102 F.3d 214, 219 (6th Cir.1996) (*citing United States v. Braggs,* 23 F.3d 1047, 1051 (6th Cir.1994)). In this respect, the instant case is analogous to *United States v. Jobson,* where the court found no constitutional violation when police failed to preserve a dispatch tape since there was no evidence of any kind that the dispatch tape would contain exculpatory information. 102 F.3d 214, 219 (6th Cir.1996).

### d. Failing to Intervene During the Arrest

Plaintiff's last claim against the Deputies is that they failed to intervene and curtail the excessive use of force employed during her arrest. She asserts that these officers were present at the time of the arrest, should have seen her being beaten, and could have taken reasonable steps to protect her from the use of excessive force by other officers. In a nutshell, she contends that the Deputies cannot don the mantle of qualified immunity since their failure to intervene was objectively unreasonable in light of the law at the time the arrest took place.

Long before this incident occurred, it was clearly established that the Due Process Clause imposes on a police officer the duty to intervene and protect a citizen from another's use of excessive force. This duty was

---

**13.** Plaintiff's claim is unusual because typically the argument is *not* that a blood sample should have been taken, but that the taking of a blood sample constituted an unreasonable search proscribed by the Fourth Amendment.

originally defined in the case of *Byrd v. Brishke*, 466 F.2d 6 (7th Cir.1972), where the Seventh Circuit concluded that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person." *Id.* at 11. The court in *Byrd* stated that officers should not be insulated "for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace." *Id. See also Putman v. Gerloff*, 639 F.2d 415 (8th Cir.1981) (deputy's failure to intervene in beating administered by sheriff sufficient to subject him to liability). *Byrd* has since been adopted by the Sixth Circuit. *See e.g. Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982) (holding that "it is not necessary, in order to hold a police officer liable under section 1983, to demonstrate that the officer actively participated in striking a plaintiff"), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983).

Having identified the right as "clearly established," the court must now determine whether plaintiff has presented sufficient evidence showing that the Deputies' actions were objectively unreasonable in light of the clearly established right for purposes of defeating Pierce and Holme's motion for summary judgment on this claim. This court submits that she has.

The Deputies argue that their actions in not interceding were objectively reasonable. According to the deposition testimony of Deputy Pierce, he was standing fifteen feet behind the suspect vehicle. He testified at his deposition that he had a general observation of the arrest, but was focusing his interest and attention on whether there was any danger remaining inside the suspect vehicle. He stated that her vehicle was obstructing his view of her as she lay on the ground. Deputy Holme on the other hand, testified at his deposition that he was standing at the passenger side of his vehicle at the initial stage of the arrest. He was on the radio attempting to secure an EMS to the scene. Sometime during her arrest, he moved to the rear of his vehicle and then had only a limited view of her arrest.

■ This court finds that there is a genuine question of fact as to whether it was reasonable for Pierce and Holme not to intervene under the circumstances. The alleged gassing and beating of the plaintiff was at most for a period of a few minutes. Plaintiff does not, however, know what these Deputies were doing at the time the other officers were arresting her. She had no view of them, was blinded by the pepper gas and thus cannot controvert their testimony. Plaintiff, however, has pointed out the inconsistencies in the Deputies' current rendition of the facts. For instance, at the preliminary exam conducted on January 5, 1994 (12 days after the incident), Pierce boldly proclaimed that "yes I was on the scene and observed everything that took place." This seems contradictory to his present position that he merely had a "general observation" of the arrest since his attention was focused, not on plaintiff, but on the interior of the vehicle. In sum, there are genuine issues as to whether defendants saw the other officers use force, and whether there was sufficient time to intervene or prevent the alleged harm from occurring. These are issues for the trier of fact to resolve. *See Medley v. Turner*, 869 F.Supp. 567, 572 (N.D.Ill.1994) ("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."). *See also Diebitz v. Arreola*, 834 F.Supp. 298, 304 (E.D.Wis.1993) (holding that officer had ample opportunity to make some type of effort to protect plaintiff from being beaten during a jail elevator interlude lasting 30 to 60 seconds, even if it was a small gesture such as shouting to her fellow officers to stop the beating).

This court grants summary judgment in favor of the Michigan State Police Troopers Tamlyn, Harris, Drew and Crawford on all plaintiff's claims except for her claim that these defendants used excessive force during the arrest in violation of her Fourth Amendment rights. This court grants summary judgment to defendants County of Wayne, Wayne County Sheriff's Department, Wayne County Sheriff Ficano in his official and indi-

by Congress); *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 464–65, 11 L.Ed.2d 440 (1964) (" 'When a federal court is properly appealed to in a case over which it has by law jurisdiction, it has a duty to take such jurisdiction' ") (*quoting Willcox v. Consolidated Gas Co. of New York,* 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909). Here, we have already determined that this Court has federal question jurisdiction under § 301 of the LMRA. Therefore, *Charles Dowd Box* imposes no bar to removal.

## II. *ICC*

■ Next, we must address the ICC's failure to join in the petition for removal filed by ComEd and Kincaid. Ordinarily, a petition for removal fails unless all defendants join in it. *Roe v. O'Donohue,* 38 F.3d 298, 301 (7th Cir.1994) (*citing Hanrick v. Hanrick,* 153 U.S. 192, 14 S.Ct. 835, 38 L.Ed. 685 (1894); *Torrence v. Shedd,* 144 U.S. 527, 12 S.Ct. 726, 36 L.Ed. 528 (1892). Local 15 contends that removal was improper on this basis alone since it is undisputed that the ICC did not join in the petition for removal.

Local 15 further indicates that there has been no explicit waiver of the State of Illinois' sovereign immunity. The Eleventh Amendment denies federal courts jurisdiction over any action wherein a state, state agency, or department is named as a defendant. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Pursuant to the Eleventh Amendment, Local 15 argues, this Court is without jurisdiction over the present case as long as the ICC is a defendant. *See Frances J. v. Wright,* 19 F.3d 337 (7th Cir.1994), *cert. denied,* 513 U.S. 876, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994).

ComEd and Kincaid contend that the ICC's consent to removal was not required because it was fraudulently joined in this action. Defendants further argue that the Eleventh Amendment will not bar removal when the state is fraudulently joined as a party.

■ The "fraudulently joinder" doctrine provides that when joinder of a given defendant destroys the removability of a case, and when there is no basis for stating a claim against that defendant in state court, a federal court may properly dismiss such a defendant and maintain jurisdiction over the case. *See generally,* 14A C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3723 (1985). The most common case involves the joinder of a nondiverse defendant to defeat subject matter jurisdiction based on diversity of citizenship. If the federal court finds there is no basis for the cause of action against the nondiverse defendant in state court, the court will dismiss the case as against that defendant and permit removal. *See, e.g., Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97–99, 42 S.Ct. 35, 37–38, 66 L.Ed. 144 (1921); *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1122–24 (5th Cir.1987); *Anderson v. Home Ins. Co.,* 724 F.2d 82, 84 (8th Cir.1983); *Roe v. General American Life Ins. Co.,* 712 F.2d 450, 452 (10th Cir.1983).

The Seventh Circuit has applied the "fraudulent joinder" doctrine in similar cases holding that diversity jurisdiction cannot be destroyed by fraudulent joinder of nondiverse parties. *Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir.1993); *see also Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 72–74 (7th Cir.1992); *Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.,* 34 F.3d 1310, 1314–16 (7th Cir.1994). "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb,* 990 F.2d at 327.

Although we are not aware of any case in which the Seventh Circuit has applied the doctrine in a case involving federal question jurisdiction, other courts have found fraudulent joinder equally appropriate in federal question cases. *See McKay By and Through McKay v. Boyd Const. Co., Inc.,* 769 F.2d 1084, 1087 (5th Cir.1985); *Simmons v. State of Cal., Dept. of Indus. Relations, Div. of Labor Standards Enforcement,* 740 F.Supp. 781, 786–87 (E.D.Cal.1990); *Stephans v. State of Nev.,* 685 F.Supp. 217, 219–20 (D.Nev.1988). In *McKay,* the Fifth Circuit,

which had previously applied the fraudulent joinder doctrine in diversity cases, found "no reason why a different rule would apply where the codefendant's presence bars federal jurisdiction because of the eleventh amendment." 769 F.2d at 1087.

District courts from other circuits have reached a similar conclusion. In *Simmons*, the plaintiffs filed a civil rights action in state court against the state of California, various subdivisions thereof, and various private defendants. The private defendants subsequently removed the action to federal court asserting federal question jurisdiction. The plaintiffs then moved to remand arguing that the district court lacked subject matter jurisdiction over the state defendants under the Eleventh Amendment. The district judge noted the applicability of fraudulent joinder in the diversity context but also found it equally appropriate in federal question cases when a claim is asserted against the state and a cause of action clearly does not exist. 740 F.Supp. at 786. The doctrine should be applied when the plaintiff knows a claim is groundless in law or fact to permit defendants to litigate federal claims in a federal rather than a local forum. *Id.* at 787. In such a case, the state will be disregarded for removal purposes. *Id.*

In *Stephans*, the court also applied the doctrine of fraudulent joinder in a federal question case. After determining that the plaintiff could state no cause of action against the state defendant in state court, the district court dismissed the state defendant and retained jurisdiction over the case pursuant to 28 U.S.C. § 1331. 685 F.Supp. at 219–21; *see also Insinga v. LaBella,* 845 F.2d 249, 254 (11th Cir.1988) (federal district court properly allowed removal under principles "akin to a finding of fraudulent joinder" after state court dismissed state defendant on sovereign immunity grounds); *Glover By and Through Glover v. Donnell,* 878 F.Supp. 898, 900–02 (S.D.Miss.1995) (joinder of state offi-

cial fraudulent and therefore no bar to removal when official could not be sued pursuant to qualified immunity); *Farmers' Bank Trust Co. of Hardinsburg, Ky. v. Atchison, T. & S.F. Ry. Co.,* 25 F.2d 23 (8th Cir.1928) (fraudulent joinder of claims in FELA case); *Preston v. Grant Advertising, Inc.,* 375 F.2d 439 (5th Cir.1967) (fraudulent joinder of claims in Jones Act case).

■■■ We find the reasoning in *McKay, Simmons,* and *Stephans* compelling in the instant case.[2] Local 15 has not provided, and nor have we discovered, any reason for not applying the fraudulent joinder doctrine in federal question cases. On the contrary, the rationale for applying the doctrine in federal question cases is equally compelling, if not more so, than in diversity cases. Defendants should be permitted to litigate federal claims in a federal forum. A plaintiff should not be allowed to defeat federal court jurisdiction under 28 U.S.C. § 1331 by fraudulently joining the state, or any other type of defendant, against whom no claim for relief could succeed in state court. In the absence of any Seventh Circuit authority to the contrary, we apply the doctrine of fraudulent joinder in the present case.

In determining whether the ICC was fraudulently joined, we must determine whether Local 15 can state a claim for relief against the ICC in Illinois state court. This is the same determination necessitated by a motion to dismiss. *See* Fed.R.Civ.P. 12(b)(6); *Green v. Amerada Hess Corp.,* 707 F.2d 201 (5th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984). Thus, the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *Wilson v. Formigoni,* 42 F.3d 1060, 1062 (7th Cir. 1994); *McMath v. City of Gary, Ind.,* 976 F.2d 1026, 1031 (7th Cir.1992). "Dismissal is

---

**2.** We, of course, recognize that decisions of other courts of appeals and other district courts are not binding precedent on this Court. Nevertheless, when, as here, our circuit has not spoken on a particular issue, we must "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever we can," particularly when we find those decisions per-

suasive. *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987) (*citing Richards v. Local 134, Intern. Broth. of Elec. Workers,* 790 F.2d 633, 636 (7th Cir.1986)). Similarly, we may adopt and apply the reasoning of other district courts when it does not conflict with higher authority and we find it persuasive as applied to the facts of the case before us.

properly granted if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir.1993) (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)). If Local 15 can state no claim for relief against the ICC in Illinois state court, we will dismiss the ICC as a party to this suit and retain jurisdiction over the case pursuant to 28 U.S.C. § 1331.

Having thoroughly reviewed Local 15's case against the ICC, we find that it is without merit. Local 15 has failed state a claim upon which relief can be granted against the ICC in state or federal court. To reach this conclusion, we look no further than Local 15's complaint. *See, e.g., Hoosier,* 34 F.3d at 1315.

Local 15 alleges that ComEd filed a petition with the ICC requesting approval of its Sale Agreement with Kincaid for the sale of the Generating Station. (Compl.¶ 20). This petition is currently pending before the ICC and a final decision is expected no earlier than February of 1997. Local 15 further alleges that the Sale Agreement is in direct violation of the Illinois successor statute which the "ICC must take into consideration when a Petition is filed asking for approval of the sale of certain utility property located in the State of Illinois, pursuant to Section 7–102 of the Illinois Public Utilities Act, all applicable Illinois Statutes that relate directly to the transaction pending before the ICC." (Compl.¶¶ 21–22). Injunctive relief is therefore necessary, Local 15 Alleges, to prevent the ICC "from issuing a final Order consenting to and/or approving said Petition with the aforementioned Asset Sales Agreement with provisions that are in direct violation of an Illinois statute." (Compl.¶ 23).

■ This claim is defective on several grounds. First, and most obviously, it is not yet ripe for review. As Local 15 concedes, the ICC has not yet decided ComEd's petition. Local 15 has therefore not suffered, and may never suffer, any concrete injury as a result of the ICC's final decision. It is entirely possible that the ICC will disapprove the petition thereby mooting Local 15's claims altogether.

■ In *National Marine, Inc. v. Illinois E.P.A.,* 159 Ill.2d 381, 203 Ill.Dec. 251, 639 N.E.2d 571 (1994), the plaintiff filed suit against the defendant state agency seeking declaratory and injunctive relief after the agency issued a notice informing the plaintiff that it may be potentially liable for the release, or substantial threat of release, of hazardous substances on its property. The case was dismissed by the circuit court and affirmed by the Illinois Appellate Court. The Illinois Supreme Court agreed holding that the plaintiff's claim was not a controversy "ripe" for review:

> The basic rationale of the ripeness doctrine ... 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'

*Id.* at 388, 203 Ill.Dec. at 254, 639 N.E.2d at 574 (*citing Bio–Medical Laboratories, Inc. v. Trainor,* 68 Ill.2d 540, 546, 12 Ill.Dec. 600, 370 N.E.2d 223 (1977) (*quoting Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). An agency's preliminary, investigative action does not create an actual controversy capable of judicial resolution or review. *Id.* at 389–90, 203 Ill. Dec. at 254, 639 N.E.2d at 574. "Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Id.* at 390, 203 Ill.Dec. at 255, 639 N.E.2d at 575 (*citing Howlett v. Scott,* 69 Ill.2d 135, 141–42, 13 Ill.Dec. 9, 370 N.E.2d 1036 (1977) (*quoting Underground Contractors Ass'n v. City of*

*Chicago,* 66 Ill.2d 371, 375, 5 Ill.Dec. 827, 362 N.E.2d 298 (1977)).

In the instant case, an ICC decision is not final and appealable until the disposition of an application for rehearing before the ICC. 220 ILCS 5/10–113; *A.E. Staley Mfg. Co. v. Illinois Commerce Commission,* 166 Ill. App.3d 202, 205, 116 Ill.Dec. 915, 918, 519 N.E.2d 1130, 1133 (1988). A final ICC order also "terminates the litigation between the parties on the merits or disposes of the rights of the parties in regard to the entire controversy or some definite part thereof." *People v. Illinois Commerce Commission,* 114 Ill.App.3d 384, 388, 70 Ill.Dec. 108, 110, 448 N.E.2d 986, 988 (1983).

There has been no such order here. Local 15's complaint, under these circumstances, is therefore premature. *See, e.g., Big River Zinc Corp. v. Illinois Commerce Commission,* 232 Ill.App.3d 34, 38–40, 173 Ill.Dec. 548, 550–52, 597 N.E.2d 256, 258–60 (1992) (dismissing appeal of ICC order approving utility's rider proposal "in concept" as unripe when utility still had to seek ICC approval to implement rider, so that no concrete injury felt at time of suit); *A.E. Staley,* 166 Ill. App.3d at 207–08, 116 Ill.Dec. at 919, 519 N.E.2d at 1134 (dismissing appeal of ICC order implementing rule as unripe when there was no hardship imposed on plaintiffs and likelihood of future burden dependent on several contingencies).

■ Moreover, Local 15 has failed to exhaust its administrative remedies before the ICC. The Public Utilities Act provides the exclusive procedure for setting aside an order of the ICC. *N–Ren Corp. v. Illinois Commerce Com'n,* 98 Ill.App.3d 1076, 1079, 53 Ill.Dec. 582, 585, 423 N.E.2d 1386, 1389. Pursuant to the Act, any party aggrieved by a decision of the ICC must file an application for rehearing with the ICC before seeking relief in court. 220 ILCS 5/10–113 ("No appeal shall be allowed from any rule, regulation, order or decision of the Commission unless and until an application for a rehearing thereof shall first have been filed with and finally disposed of by the Commission."); *Meinhardt Cartage Co. v. Illinois Commerce Commission,* 15 Ill.2d 546, 550, 155 N.E.2d 631, 634 (1959) ("It is the policy of the law to

require a petition for rehearing, since it is more expeditious than an appeal. Hence, errors can be remedied by the Commission while it has full control of the matter and no appeal may be necessary.").

In the present case, Local 15 has not exhausted its administrative remedies, and nor could it, since the ICC has not yet issued even its initial decision. Any attempt to obtain judicial review of this upcoming decision prior to the exhaustion of administrative remedies pursuant to an application for rehearing must result in dismissal. *See, e.g., Union Bank v. Blackstone Sunbury–Nevada Grain Co., Inc.,* 254 Ill.App.3d 206, 209–10, 194 Ill.Dec. 269, 271–72, 627 N.E.2d 385, 387–88 (1993) (dismissing suit for injunctive relief against agency on exhaustion grounds because plaintiff failed initially to present claims to agency).

■ Even if Local 15's claims against the ICC were ripe for review and all administrative remedies had been exhausted, the Circuit Court of Sangamon County, Illinois, does not have jurisdiction to review a final decision of the ICC. Decisions of the ICC are controlled exclusively by the Public Utilities Act, *see N–Ren Corp.,* 98 Ill.App.3d at 1079, 53 Ill.Dec. at 585, 423 N.E.2d at 1389, and are not reviewed by the circuit courts. Rather, any party challenging such a decision must, after filing an application for rehearing with the ICC, pursue that challenge before the appellate court of the judicial district in which the subject matter of the hearing is situated. 220 ILCS 5/10–201(a); *N–Ren Corp.,* 98 Ill.App.3d at 1079, 53 Ill.Dec. at 585, 423 N.E.2d at 1389. The Illinois Appellate Court's decision is then taken directly to the Illinois Supreme Court. 220 ILCS 5/10–202. Thus, the Circuit Court of Sangamon County, Illinois, lacks authority to review the ICC's final decision and provide the relief Local 15 seeks in this case.

Accordingly, we conclude that an Illinois state court would not, under any circumstances, find that Local 15 had validly stated a cause of action against the ICC. Because Local 15's case against the ICC fails to state a claim upon which relief can be granted, the joinder of the ICC may not be used to defeat

federal court jurisdiction. Pursuant to the doctrine of fraudulent joinder, the ICC is not a proper defendant to this action and is hereby dismissed. We retain subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question).

### CONCLUSION

For all of the foregoing reasons, Local 15's motion to remand is denied. The ICC is hereby dismissed as a party to this suit. The only remaining defendants are ComEd and Kincaid.

It is so ordered.